1
2
3
4
5
6
7
8                        UNITED STATES DISTRICT COURT

9                      CENTRAL DISTRICT OF CALIFORNIA

10

11  GREGORY WASHINGTON,              )   NO. CV 05-6038-MAN
                                     )
12                 Plaintiff,        )
         v.                          )   MEMORANDUM OPINION AND ORDER
13                                   )
                                     )
14  MICHAEL J. ASTRUE[1]             )
    Commissioner of the             )
15  Social Security Administration,  )
                                     )
16                 Defendant.        )
    _____)

17

18       Plaintiff filed a Complaint on August 22, 2005, seeking review of

19  the denial by the Social Security Commissioner ("Commissioner") of

20  Plaintiff's claim for supplemental security income benefits ("SSI").  On

21  September 20, 2005, the parties consented to proceed before the

22  undersigned United States Magistrate Judge, pursuant to 28 U.S.C. §

23  636(c).  The parties filed a Joint Stipulation ("Joint Stip.") on July

24  6, 2006, in which:   Plaintiff seeks an order reversing the

25

26  _____

27       [1]   Michael J. Astrue became the Commissioner of the Social
    Security Administration on February 12, 2007, and is substituted in
    place of former Commissioner Joanne B. Barnhart as the Defendant in this
28  action.  (See Fed. R. Civ. P. 25(d)(1); Section 205(g) of the Social
    Security Act, last sentence, 42 U.S.C. § 405(g).)

Commissioner's decision and directing the payment of benefits, or alternatively, remanding the case for a new hearing; and Defendant requests that the Commissioner's decision be affirmed.  The Court has taken the parties' Joint Stipulation under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff filed applications for SSI on February 11, 2003. (Administrative Record ("A.R.") 42-44.)  Plaintiff claims to have been disabled since January 27, 2003, due to:  lower back, hip, and chest pain; shortness of breath; and obesity.[2]  (A.R. 16.)  Plaintiff has past relevant work experience as a rough carpenter and metal finisher.  (A.R. 18.)

The Commissioner denied Plaintiff's claim for benefits initially and on reconsideration.  On June 16, 2004, Plaintiff, who was represented by counsel, testified at a hearing before Administrative Law Judge Richard Leopold ("ALJ").  (A.R. 128-45.)  In a November 15, 2004 decision, the ALJ found that Plaintiff was not disabled, and the Appeals Council subsequently denied Plaintiff's request for review of that decision.  (A.R. 4-6, 15-19.)

---

[2]    Plaintiff had filed prior applications for disability benefits that were denied at the initial consideration level.  (A.R. 15.) Although Plaintiff claimed to have been disabled since birth in his present application, the ALJ considered only whether he was disabled following his protective filing date, January 27, 2003.  (A.R. 15, 42.)

2

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that Plaintiff has not engaged in substantial gainful activity since January 27, 2003, his protective filing date.  (A.R. 18.) The ALJ also found that Plaintiff was a "younger individual," as of the date of the decision, and has a high school education.  (A.R. 19.)  He concluded that Plaintiff's impairments, consisting of poorly controlled hypertension, lower back pain syndrome, and obesity, are "severe," but concluded that Plaintiff did not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.  (A.R. 18.)  The ALJ further found that Plaintiff's allegations of disabling physical limitations were not fully credible for the reasons set forth in detail in his decision.  (*Id.*)

The ALJ determined that Plaintiff had the following residual functional capacity:

> [Plaintiff] is limited to work at the sedentary exertional level as defined by the regulations.  He is limited to only occasional stooping, crouching, kneeling, climbing, crawling and balancing as that term is also defined by the regulations. [Plaintiff] has mild limitations in attention/concentration and understanding/memory due to his non-exertional complaints of pain.[3]

---

[3]   "Sedentary work" involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."  20 C.F.R. § 416.967.

3

1  (A.R. 18.)

2

3      The ALJ further found that Plaintiff was unable to perform his past
4  relevant work and does not have skills transferable to skilled or semi-
5  skilled jobs within his residual functional capacity. (A.R. 18.)
6  Relying upon the testimony of a vocational expert, the ALJ found that
7  Plaintiff could perform a significant number of other jobs in the
8  national economy. (A.R. 19.) Thus, the ALJ concluded that Plaintiff
9  was not disabled. (*Id.*)

10

11                        **STANDARD OF REVIEW**

12

13      This Court reviews the Commissioner's decision to determine
14  whether it is free from legal error and supported by substantial
15  evidence. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996). The
16  Commissioner's decision must stand if it is supported by substantial
17  evidence and applies the appropriate legal standards. Saelee v. Chater,
18  94 F.3d 520, 521 (9th Cir. 1996). Substantial evidence is "more than a
19  mere scintilla but less than a preponderance -- it is such relevant
20  evidence that a reasonable mind might accept as adequate to support the
21  conclusion." Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995).

22

23      Although this Court cannot substitute its discretion for that of
24  the Commissioner, this Court nonetheless must review the record as a
25  whole, "weighing both the evidence that supports and the evidence that
26  detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y. of
27  Health and Human Serv., 846 F.2d 573, 576 (9th Cir. 1988); *see also*
28  Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is

                                4

1  responsible for determining credibility, resolving conflicts in medical
2  testimony, and for resolving ambiguities." <u>Andrews v. Shalala</u>, 53 F.3d
3  1035, 1039-40 (9th Cir. 1995).   This Court must uphold the
4  Commissioner's decision if it is supported by substantial evidence and
5  free from legal error, even when the record reasonably supports more
6  than one rational interpretation of the evidence. *Id.* at 1041; *see also*
7  <u>Morgan v. Comm'r. of the Social Security Administration</u>, 169 F.3d 595,
8  599 (9th Cir. 1999); <u>Flaten v. Secretary</u>, 44 F.3d 1453, 1457 (9th Cir.
9  1995).

10
11                              **DISCUSSION**
12
13        Plaintiff alleges six disputed issues.  <u>First</u>, he contends that the
14  ALJ failed to evaluate his limitations properly.  <u>Second</u>, he contends
15  that the ALJ inadequately considered the side effects of his
16  medications.   <u>Third</u>, he contends that the ALJ did not evaluate his
17  obesity and heart condition properly.  <u>Fourth</u>, he contends that the ALJ
18  erred in considering the impact of his combined medical problems.
19  <u>Fifth</u>, he contends that the ALJ improperly relied upon the Medical
20  Vocational Guidelines (the "Grids").  <u>Sixth</u>, he contends that the ALJ
21  erred in relying upon a vocational expert's testimony.  (Joint Stip. at
22  3-4.)

23
24  **A.   <u>The Record Needs To Be Developed Regarding Plaintiff's Residual</u>**
25  **<u>Functional Capacity</u>.**

26
27        Ordinarily, the opinions of a treating physician should be given
28  great, if not controlling, weight.  *See* Social Security Ruling 96-2p.

                                    5

When the ALJ rejects the opinion of a treating physician, even if it is contradicted, the ALJ may reject that opinion only by providing specific and legitimate reasons for doing so, supported by substantial evidence in the record.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995); *see also* Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)(ALJ erred by rejecting the treating physicians' opinions and relying upon Social Security examiners' opinions in finding that claimant's chronic fatigue syndrome had not rendered her disabled).  Broad and vague reasons will not suffice for rejecting the treating physician's opinion.  *See* McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989)(ALJ must do more than offer conclusions and must specify why the treating physician's opinion is flawed).

In a June 3, 2004 evaluation, Cuthbert Pyne, M.D. found that Plaintiff:  1) can sit one hour, stand a half hour, and walk up to five minutes at one time; 2) can sit up to three hours, stand up to two hours, and walk up to four to five minutes during an eight-hour workday; 3) can lift and carry up to five pounds occasionally; 4) cannot use his hands for repetitive pushing and pulling of arm controls; 5) can bend and reach occasionally, but cannot squat, crawl, or climb; and 6) is totally restricted from activities involving unprotected heights and being around moving machinery, moderately restricted from activities involving exposure to marked changes in temperature and humidity, and mildly restricted from activities involving exposure to dust, fumes, and gases.  (A.R. 125.)  In addition, Dr. Pyne remarked:  "[Plaintiff] has chronic pain in [the] lower back [and] right hip.  He has a large abdominal hernia, he has swelling of both legs, and he is hypertensive. In my opinion, he is permanently totally disabled and he is not a

1  candidate for rehabilitation." (*Id.*)

2

3      In the May 16, 2003 report of Aziz Karamlou, M.D., an internal
4  medicine physician and hematologist who examined Plaintiff at the
5  request of the Commissioner, Dr. Karamlou stated that he "considered"
6  the following diagnoses:  history of hypertension, associated with
7  headaches and dizziness; chest pain, which is atypical in nature;
8  gunshot wound to the cardiac area, complicated by the bullet lodging in
9  the cardiac area with attempted removal of the bullet, with current
10 chest pain and dyspnea on exertion; low back pain syndrome, associated
11 with pain that is mild to moderate and constant; and blurry vision,
12 needing refractory evaluation. (A.R. 118.)  In describing Plaintiff's
13 limitations, Dr. Karamlou found that Plaintiff's "ability to stand
14 and/or walk is limited to four hours in an 8-hour workday with normal
15 breaks in between," "[b]ending is also limited," and "his ability to
16 lift and carry objects is limited to 20 lbs occasionally and 10 lbs
17 frequently." (*Id.*)  Dr. Karamlou physically examined Plaintiff and
18 reviewed an EKG, which showed "normal sinus rhythm and nonspecific ST
19 changes," but he did not review any treating records. (*Id.*)

20

21     In discussing the medical evidence regarding Plaintiff's
22 limitations, the ALJ stated:

23

24     [Plaintiff] has had little in the way of treatment subsequent
25     to the date of filing of his application for benefits.  For
26     this reason, he was referred for a consultative physical
27     examination to a Board Certified internist upon referral from
28     the state agency on May 16, 2003.  [Plaintiff] complained of

chest and lower back pain with shortness of breath on exertion. [Plaintiff] reported that his lower back pain is mild to moderate in severity and constant. He takes anti-inflammatory medication for his complaints of pain. [Plaintiff] has a history of hypertension associated with headaches and dizziness for which he also takes medication. Physical examination showed [Plaintiff's] heart to have a regular sinus rhythm and nonspecific ST changes of no clinical significance. [Plaintiff's] chest pain was found to be quite atypical, as it was dull in nature and retrosternal. He was diagnosed within normal limits. His vision was found to be blurry and the internist reported [Plaintiff] needed an eye examination. [Plaintiff's] blood pressure was found to be 160/90, and the internist reported it to be poorly controlled. The internist limited [Plaintiff] to work at the light exertional level with standing and/or walking limitations of four hours out of an eight hour workday, with normal breaks in between. Exhibit 5F.

[Plaintiff's] attorney submitted a residual functional capacity assessment completed by [Plaintiff's] "long time" treating physician, Cuthbert W. Pyne, M.D. Dr. Pyne limited [Plaintiff] to work at less than the sedentary exertional level based on lifting limitations not greater than five pounds and standing/sitting limitations for not more than one hour, among others. Exhibit 6F. Although Dr. Pyne may have treated [Plaintiff] in the past, there are no records of treatment with clinical and diagnostic findings as of the date

of filing of [Plaintiff's] application for benefits.   The regulations provide that in order to find a severe medically determinable impairment, there must be physical signs and symptoms as evidenced by clinical findings and diagnostic testing.   In this case, there are none, therefore, Dr. Pyne's opinions cannot be given controlling wight pursuant to the regulations.

(A.R. 16-17.)

Plaintiff contends that the ALJ improperly rejected the opinion of Dr. Pyne regarding Plaintiff's limitations.   (Joint Stip. at 4-5.) Plaintiff further requests that the case be remanded, so that the ALJ can obtain:  additional evidence from Dr. Pyne; an updated, consultative orthopedic examination; and additional testimony from an orthopedic expert.[4]  (Joint Stip. at 5.)

In determining Plaintiff's residual functional capacity, the ALJ relied upon Dr. Karamlou's report and stated:  "[c]ontrolling weight is given to the clinical and diagnostic findings of the consultative examining internist and [Plaintiff's] subjective complaints, but only to the extent that they are supported by the evidence of record pursuant to the regulations and Social Security Ruling 96-7p, respectively." (A.R. 17.)   The ALJ concluded that Plaintiff had a more restricted residual

---

[4]   To the extent Plaintiff also contends that the ALJ failed to evaluate properly his claimed limitations, such as his angina pain and limited ability to stand or walk, these arguments are addressed in Section B, *infra*, in connection with the ALJ's consideration of the credibility of Plaintiff's claims regarding the side effects of his medication.

functional capacity than the one Dr. Karamlou found, factoring in a portion of Plaintiff's subjective complaints, and he limited Plaintiff to work at the "sedentary" exertional level, with only occasional stooping, crouching, kneeling, climbing, crawling, and balancing, and mild limitations in attention/concentration and understanding/memory. (A.R. 18.)

The ALJ's reliance on the opinion of Dr. Karamlou, the consultative examiner, to support his finding regarding Plaintiff's residual functional capacity is misplaced. Although Dr. Karamlou reviewed an EKG and physically examined Plaintiff, he did not review any of the existing medical records regarding Plaintiff's health. Dr. Karamlou noted Plaintiff's need for an eye exam to further explore his complaints of blurry vision and also observed that Plaintiff was limping and had "atypical" chest pain; this suggests that a more thorough examination is necessary to assess fully Plaintiff's impairments. (A.R. 116-17.) Indeed, Dr. Karamlou did not provide any concrete diagnosis, but merely listed diagnoses that he "considered." (A.R. 118.)

Thus, it is unclear whether Dr. Karamlou based his assessment on a sufficiently complete picture of Plaintiff's condition. See 20 C.F.R. § 416.917 ("[i]f we arrange for [a consultative] examination or test, ... [w]e will also give the examiner any necessary background information about your condition."); Nalley v. Apfel, 100 F. Supp. 2d 947, 953 (S.D. Iowa 2000)("when a claimant is sent to a doctor for a consultative examination, all the available medical records should be reviewed by the examiner"). See also Hurstrom v. Barnhart, 233 F. Supp. 2d 1159, 1166 (S.D. Iowa 2002)("There is no indication that either

10

[consultative physician] had access to any of the medical records which were available at the time of their examinations. . . .   Even if Plaintiff told the consulting doctors that he had no limitations, these statements are not credible in light of the numerous laboratory reports showing that his blood sugar is out of control."); Ladue v. Chater, 1996 WL 83880, *5 (N.D. Cal. 1996)(requiring remand where "[t]he ALJ failed to conform to 20 C.F.R. § 404.1517 requiring that the consultative examiner be provided with necessary background information regarding the claimant's condition [and] it appears from the record that the ALJ gave Dr. Mehta's consultative report considerable weight, even though Dr. Mehta was lacking important background information regarding plaintiff").   As a result, the Court cannot confirm whether Dr. Karamlou's opinion constitutes substantial evidence.

Nevertheless, it was appropriate for the ALJ not to give Dr. Pyne's opinion "controlling weight," because as the ALJ recognized, Dr. Pyne's opinion lacked supporting treatment records or clinical findings. *See* Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2003)("The ALJ need not accept the opinion of any physician . . . if that opinion is brief, conclusory, and inadequately supported by clinical findings."); Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992)(ALJ may reject the opinion of either a treating or examining physician if that opinion is conclusory, brief and unsupported by clinical findings).   However, given the lack of other adequate evidence of record regarding Plaintiff's residual functional capacity, it was error to reject Dr. Pyne's opinion outright -- which, even though it was defective, was the only medical opinion from a treating source directly opining on this dispositive issue -- without first attempting to develop its basis further.

1    In addition to the scant and ambiguous medical evidence, the wide

2  variance between the limitations found by Dr. Karamlou, versus Dr. Pyne,

3  suggests that further development of the record is required.[5]   Webb v.

4  Barnhart, 433 F.3d 683, 687 (9th Cir. 2005)(*citing* Tonapetyan v. Halter,

5  242 F.3d 1144, 1150 (9th Cir. 2001)(ALJ's duty to supplement the record

6  may be triggered by ambiguous evidence); *see also* 20 C.F.R. §

7  416.919a(b)(listing situations requiring a consultative examination,

8  such as a conflict, inconsistency, ambiguity, or insufficiency in the

9  evidence); 20 C.F.R. § 416.917 (when a claimant's medical sources

10 provide insufficient evidence to determine whether the claimant is

11 disabled, a consultative examination may be ordered); *see* also 20 C.F.R.

12 § 416.912(e)(duty to re-contact treating physician); Thomas, 278 F.3d at

13 957 (requirement in 20 C.F.R. § 416.912(e) that the Commissioner re-

14 contact treating sources is triggered where the information from the

15 treating sources is inadequate to make a determination regarding

16 disability).

17

18    To the extent Plaintiff contends that the ALJ improperly evaluated

19 limitations arising from his heart condition and obesity (Joint Stip. at

20 4, 10), these conditions also should be examined more fully to determine

21 what additional impact, if any, they have on Plaintiff's residual

22 functional capacity.  Although the ALJ found that Plaintiff had a

23 "severe" impairment of obesity, but no "severe" impairment pertaining to

24 his heart or chest pain, even limitations arising from "non-severe"

25

26    [5]    While Defendant's point is well-taken that Plaintiff's counsel
   did absolutely nothing to supplement the record regarding Dr. Pyne's
27 opinion, the ultimate duty to develop the record rests with the
   Commissioner.  Brown v. Heckler, 713 F.2d 441, 442-43 (9th Cir.
28 1983)(Commissioner has an affirmative duty to develop the record).

impairments must be considered in determining Plaintiff's residual functional capacity. *See* 20 C.F.R. § 416.945(e)(When assessing a claimant's residual functional capacity finding, an ALJ must "consider the limiting effects of all the claimant's impairment(s), even those that are not severe."). Thus, on remand, the ALJ should clarify and develop the record as to whether Plaintiff has a more limited residual functional capacity through eliciting an additional opinion from a medical expert, an examining doctor, or one of Plaintiff's treating doctors, and must ensure that the entire record is addressed by such physician.

Accordingly, the ALJ's finding regarding Plaintiff's residual functional capacity is in error.

**B.  The ALJ's Finding Regarding Plaintiff's Claimed Symptoms And Limitations Should Be Reassessed On Remand.**

The law is well-settled that, once a disability claimant produces objective medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to her subjective symptoms merely because they are not corroborated by objective evidence. Tonapetyan, 242 F.3d at 1147-48 (9th Cir. 2001); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991); Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989). As the Ninth Circuit has explained:

[A]n ALJ's finding that a claimant generally lacked credibility is a permissible basis to reject excess pain testimony. But, because a claimant need not present clinical

13

1     or diagnostic evidence to support the severity of his pain,

2     *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990)

3     (stating that "it is the very nature of excess pain to be out

4     of proportion to the medical evidence"), a finding that the

5     claimant lacks credibility cannot be premised wholly on a lack

6     of medical support for the severity of his pain.

7

8     Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). This rule

9     is based on the recognition that pain is an inherently subjective

10    phenomenon, which cannot be objectively verified or measured and varies

11    significantly among individuals. Bunnell, 947 F.2d at 347.

12

13    Unless the evidence suggests affirmatively that a claimant is

14    malingering, the ALJ must provide clear and convincing reasons for

15    rejecting the claimant's excess pain or symptom testimony, such as

16    conflicts between the claimant's testimony and conduct, or internal

17    contradictions in the claimant's testimony. Dodrill v. Shalala, 12 F.3d

18    915, 918 (9th Cir. 1993); Light, 119 F.3d at 792. In determining

19    whether a claimant's testimony regarding the severity of his symptoms is

20    credible, the ALJ may consider: "(1) ordinary techniques of credibility

21    evaluation, such as the claimant's reputation for lying, prior

22    inconsistent statements concerning the symptoms, and other testimony by

23    the claimant that appears less than candid; (2) unexplained or

24    inadequately explained failure to seek treatment or to follow a

25    prescribed course of treatment; and (3) the claimant's daily

26    activities." Smolen, 80 F.3d at 1284.

27

28    The Court will give great weight to the ALJ's credibility

14

assessment.  <u>Anderson v. Sullivan</u>, 914 F.2d 1121, 1124 (9th Cir. 1990);
<u>Brawner v. Sec. of Health and Human Serv.</u>, 839 F.2d 432, 433 (9th Cir.
1988)(recognizing that the ALJ's credibility determination is to be
given great weight when supported specifically).  However, when an ALJ's
decision rests on a negative credibility evaluation, "the ALJ must make
findings on the record and must support those findings by pointing to
substantial evidence on the record."  <u>Cequerra v. Sec. of Health and
Human Serv.</u>, 933 F.2d 735, 738 (9th Cir. 1991); <u>Oreteza v. Shalala</u>, 50
F.3d 748, 750 (9th Cir. 1995)(the ALJ's findings must be "sufficiently
specific to permit the reviewing court to conclude that the ALJ did not
arbitrarily discredit the claimant's testimony.").  When discrediting a
claimant's testimony, it is not enough for the ALJ to make only general
findings; he must state what testimony is not credible and what evidence
supports that conclusion.  *See* <u>Swenson v. Sullivan</u>, 876 F.2d 683, 688
(9th Cir. 1989); *see also* <u>Lester</u>, 81 F.3d at 834 (an ALJ may reject a
plaintiff's testimony based on lack of credibility only if the ALJ
states specific and cogent reasons for doing so).

     In rejecting Plaintiff's claimed limitations and symptoms, the ALJ
reasoned as follows:

          [Plaintiff] reported that he is homeless and both eats
     and resides at homeless shelters.  He stated that he must sit
     down and rest for about 15 to 20 minutes after walking one
     half block. [Plaintiff] noted that he keeps his personal
     belongings in a cart of some sort which he wheels around.
     Exhibit 1E.  Although it is sad that [Plaintiff] is homeless,
     it would appear that he must of necessity expend considerable

physical effort in order to live the way he describes. [Plaintiff] has not been hospitalized, sought treatment in an emergency room or been given narcotic-based pain medication ordinarily prescribed for severe and unremitting pain. The foregoing cast[s] doubt on the credibility of his complaints of totally disabling limitations.

(A.R. 17.)

Plaintiff contends that the ALJ failed to evaluate properly the side effects of his medications, which he contends result in dizziness and possible stomach problems. (Joint Stip. at 8-9.) In addition, Plaintiff contends that the ALJ failed to evaluate properly his claimed limitations arising from his chest pain, and his claimed limitations with respect to standing and walking. (Joint Stip. at 4.)

At the hearing, Plaintiff's testimony revealed the following: he walks with a cane, which he has been using since 2003 (A.R. 138); he only can walk slightly less than the distance of several rooms before his back "start[s] tightening up," and he only can sit and stand for a half hour before having pain in his stomach and lower back (A.R. 139); he can lift and carry less than five pounds (A.R. 139); his driver's license expired, and he never got it renewed (A.R. 139-40); he has "constant chronic pain in [his] lower back, shortness of breath, [and] dizzy spells" (A.R. 140); and the pills he takes for his pain "lead to dizziness," which has caused him to fall and seek emergency room treatment (A.R. 140-41).

16

1    Although Plaintiff testified that he had dizzy spells caused by his
2    medications, the ALJ did not address such testimony in his credibility
3    evaluation.   Similarly, the ALJ did not address Plaintiff's claimed
4    stomach pain -- regardless of whether it is a side effect of medication
5    or arises from some other cause.   The ALJ erred by not addressing this
6    testimony specifically.   *See* <u>Swenson</u>, 876 F.2d at 688 (ALJ erred by
7    failing to delineate or differentiate his reasons for rejecting
8    Plaintiff's testimony regarding different claimed symptoms and
9    limitations).   Defendant contends that the ALJ accommodated Plaintiff's
10   claimed symptoms and limitations, such as his claimed chest pain and
11   problems with standing and walking, by limiting him to "sedentary" work
12   and by providing postural limitations. (Joint Stip. at 11.)   While this
13   may be correct, as the ALJ generally noted that he was giving weight to
14   some of Plaintiff's claimed symptoms and limitations in his residual
15   functional capacity assessment, it is not entirely clear which claimed
16   symptoms and limitations he incorporated, or how he incorporated them,
17   into his assessment.   *See generally* <u>Steele v. Barnhart</u>, 290 F.3d 936,
18   941 (7th Cir. 2002)(an ALJ must build a logical bridge from the evidence
19   to his conclusion).   Furthermore, the development of the record directed
20   above may shed more light on the veracity of Plaintiff's claimed
21   limitations and symptoms following his stroke.

22

23   In view of the above, it is not clear that the ALJ's finding
24   regarding the credibility of Plaintiff's testimony regarding his
25   limitations and symptoms is adequately supported by substantial
26   evidence, and this credibility finding should be reassessed on remand.
27   ///
28   ///

17

1  **C.    Further Vocational Testimony Likely May Be Required**.

2

3         Because the findings regarding Plaintiff's limitations must be re-
4  evaluated on remand, Plaintiff's ultimate residual functional capacity
5  assessment may change.  An ALJ must seek the testimony of a vocational
6  expert if the claimant has non-exertional limitations.  *See* Reddick, 157
7  F.3d at 729 (because the claimant had non-exertional limitations, it was
8  error not to seek the testimony of a vocational expert).  If the
9  vocational expert's testimony is not based on a claimant's complete set
10 of limitations, then it has no evidentiary value.  *See* Embrey v. Bowen,
11 849 F.2d 418, 422-24 (9th Cir. 1988)(in posing a hypothetical to a
12 vocational expert, the ALJ must fully and accurately reflect all of the
13 claimant's limitations).  Therefore, the Court does not reach the sixth
14 issue raised by Plaintiff regarding the propriety of the vocational
15 expert's testimony, as the finding regarding his residual functional
16 capacity must be reassessed and additional testimony from a vocational
17 expert likely will then be required.[6]

18

19 **D.    Remand Is Necessary**.

20

21        In view of the ALJ's need to develop the record regarding
22 Plaintiff's limitations and the probable need for further vocational
23 expert testimony, this action must be remanded.  *See* Benecke v.
24 Barnhart, 379 F.3d 587, 593 (9th Cir. 2004)(where ALJ erred by

25

26        [6]   However, the fifth issue Plaintiff raises -- that the ALJ
   improperly relied on the Grids -- is wholly unfounded.  As the ALJ
27 plainly noted in his opinion, he relied upon the testimony of the
   vocational expert in determining that Plaintiff can perform other work
28 in the national economy.  (A.R. 18.)

discounting treating physicians' opinions, remand for further proceedings is appropriate if enhancement of the record would be useful); <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1104 (9th Cir. 1999)(remanding case to the Commissioner in order to obtain testimony from a vocational expert based upon the claimant's non-exertional limitations); <u>Higbee v. Sullivan</u>, 975 F.2d 558, 561-62 (9th Cir. 1991)(remanding case in order to develop the record).

## CONCLUSION

Accordingly, for the reasons stated above, the denial of benefits is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.  Judgment shall be entered reversing the decision of the Commissioner, and remanding the matter for further administrative action consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: January 11, 2008

/s/
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE